**Kenneth E. GOSS, Plaintiff-Appellee,**

v.

**CLUTCH EXCHANGE, INC., a Colorado corporation, and Sturgeon Systems, Inc., a Colorado corporation, Defendants-Appellants.**

**No. 80CA0549.**

Colorado Court of Appeals, Div. II.

July 14, 1983.

Rehearing Denied Aug. 11, 1983.

Certiorari Granted Feb. 6, 1984.

Robert Kapelke, Denver, for plaintiff-appellee.

Edwin S. Kahn, Denver, for defendants-appellants.

TURSI, Judge.

Kenneth E. Goss (Goss) instituted this action against Sturgeon System, Inc. (SSI) and Clutch Exchange, Inc. (Clutch Exchange). In his complaint, Goss claimed that SSI had failed to pay a note issued for the purchase of the stock of Clutch Exchange from Goss and that Clutch Exchange had failed to pay on a note due to him, on its consulting contract with him, and on his claim for services rendered. Defendants, SSI and Clutch Exchange, denied liability based on alleged violations of the Colorado Securities Act (Act) and common law fraud. SSI counterclaimed for return of consideration paid and other damages under the Act and, also, claimed damages based on common law fraud. Jury verdicts were returned for Goss against SSI and Clutch Exchange on his claims and against SSI on its counterclaims. Defendants appeal the judgments against them and SSI appeals the denial of its counterclaim under the Act. We reverse.

Defendants contend that the trial court erred in not granting their motion for a directed verdict because there was a material misrepresentation or omission, which under the Act, entitled them to judgment against the plaintiff on his affirmative claims as a matter of law, and entitled SSI to judgment on its counterclaim pursuant to the Act as a matter of law. In the alternative, defendants assert that the trial court erred in denying them a new trial because the verdict of the jury was against the manifest weight of the evidence which showed at least one material omission or misrepresentation under the Act. Further, defendants contend the trial court erred in the giving of its instruction defining materiality as applied under the Act.

There is evidence in the record that Goss, president and founder of Clutch Exchange, entered into negotiations with Johnson, president of SSI, for sale of stock owner-

ship in Clutch Exchange; that Goss told Johnson a cash infusion of $52,000 over three months would be adequate to make the company profitable; and that, when asked to estimate the anticipated losses of the business, Goss indicated it would be $30,000, $40,000, or more. There is also evidence that Goss informed Johnson that the company was having financial problems, was in dire need of money, and was on the verge of bankruptcy.

Section 11–51–125(1), C.R.S.1973, of the Act reads in pertinent part:

"Any person who: offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue to recover the consideration paid for the security."

The trial court gave the following instruction over the objection of the defendants:

"With respect to the Colorado Securities Act an omission or misrepresentation is material if, considering the full context, including the subject matter and the relationship of the parties, the misrepresentation or omission was of a fact which, considering the stock purchaser as a reasonable or prudent investor, would affect or influence it in determining whether to buy the stock."

I

The proper definition of materiality to be applied in the interpretation of § 11–51–125(1) has not been addressed in Colorado, and although this section is substantially the same as section 12(2) of the Federal Securities Act, there is little clear guidance in the federal cases as to the test for determining materiality under this specific

section of the Act. *See* Note, *Securities Regulation,* 50 *Temp.L.Q.* 437 (1977); Comment, *Limits of Materiality,* 30 *Am.U. L.Rev.* 225 (Fall 1980), and *Kaminsky, An Analysis of Security Litigation Under Section 12(2) and How it Compares with Rule 10b–5,* 13 *Houston L.Rev.* 231 (January 1976).

The trial court based its instruction on language in *Gilbert v. Nixon,* 429 F.2d 348 (10th Cir.1970). Unfortunately, *Gilbert v. Nixon* contains language which supports the contention of both sides before us. At one point, the *Gilbert* Court states "a material fact encompasses any fact which in reasonable and objective contemplation might affect the value of the corporation stock or securities matters as to which an average prudent investor ought to be informed." *Gilbert v. Nixon, supra.* Later the Court said:

"[I]n the present case an omission or misrepresentation of fact was material if, considering its full context, including the subject matter and the relationship of the parties, the misrepresentation or omission was of a fact which, considering appellants as reasonable or prudent investors, would affect or influence them in determining whether to buy the fractional interests."

*Gilbert v. Nixon, supra; See Kaminsky, supra.*

■ Defendants contend that to give meaning to the purposes of the Act an objective or relevancy test should be adopted. In other words, they argue that if the misstatement or omission is one of such significance that an investor might consider it important, then the question of causation is not the relevant determinative point under this section. In support of this position, they cite *Hill York Corp. v. American International Franchise, Inc.,* 448 F.2d 680 (5th Cir.1971). *But see Jackson v. Oppenheim,* 533 F.2d 826 (2nd Cir. 1976). Based upon existing Colorado law defining materiality, we find this contention persuasive.

*In Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7 (Colo.1982), the court reiterated the definition of materiality that had been adopted in *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937):

" 'The test, therefore, of material inducement is not whether the plaintiff's action *would*, but whether it *might*, have been different if the misrepresentation had not been made.' " (emphasis in original)

The court in *Ackmann* stated that in *Morrison* it had specifically rejected the narrow definition of materiality which states that there must be such importance attached to the critical facts that the purchasers decision "would" have been different. Thus, we hold that the trial court erred in failing to instruct on materiality consistent with the rule in *Morrison*.

## II

■ In response to the defendants' claim that they are entitled to directed verdicts, Goss contends that, even if materiality is defined as claimed by the defendants, there was conflicting evidence and inferences to be drawn therefrom, relating to the defense of truth of the statements in light of the circumstances under which they were made and the affirmative defense of lack of knowledge of the untruth of the statements. Thus, he argues that factual issues were presented which would preclude entry of directed verdicts for defendants. We agree. *Gossard v. Watson*, 122 Colo. 271, 221 P.2d 353 (1950); *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978).

The judgments are reversed and the cause is remanded for a new trial consistent with the holding herein.

PIERCE and SMITH, JJ., concur.